# *IN THE DISTRICT COURT OF THE UNITED STATES*

## *for the Western District of New York*

---

OCTOBER 2019 GRAND JURY
(Impaneled 10/18/2019)

**THE UNITED STATES OF AMERICA**

**INDICTMENT**

*-vs-*

**JOSEPH BELLA**

Violations:
Title 18, United States Code, Sections
1014, 1957(a), 1341, 1343, and 2
(17 Counts and 3 Forfeiture Allegations)

## INTRODUCTION

**The Grand Jury Charges That:**

At all times relevant to this Indictment:

1. Defendant JOSEPH BELLA ("BELLA") was a resident of Buffalo, New York.

2. Medcor Staffing, Inc. ("Medcor") was a domestic corporation incorporated under the laws of the State of New York on or about October 4, 2012. BELLA was a 25% owner of Medcor, and Diane Bella, BELLA's mother, owned the remaining 75%. BELLA acted as the President of Medcor and oversaw Medcor operations. Diane Bella had no role in Medcor's management or operations.

3. Medcor was a medical staffing company. Medcor employed Registered Nurses, Licensed Practical Nurses, and Certified Nurse Assistants, and then contracted with medical providers to provide nursing services through its employees for a fee.

4.      BuyMyCard LLC ("BuyMyCard") was a domestic limited liability company formed under the laws of the State of New York on or about May 5, 2016. BuyMyCard was wholly owned by BELLA.

5.      BuyMyCard was a purchaser and re-seller of gift cards. It had one or more kiosks at which a person could sell new and used gift cards to BuyMyCard at a deep discount. BuyMyCard then sold the gift cards through an online marketplace at a profit.

6.      VICTIM 1 was a corporation headquartered in Salt Lake City, Utah. VICTIM 1 developed and manufactured, among other molecular diagnostic supplies, COVID-19 Test Kits ("COVID-19 Tests"). The COVID-19 Tests could only be processed by laboratories certified to perform high-complexity molecular testing. Because of this, VICTIM 1 only sold COVID-19 Tests to laboratories certified to perform high-complexity tests, or to approved distributors, who re-sold the COVID-19 Tests to such laboratories. This was to ensure that the COVID-19 Tests were stored and handled in a safe way that preserved the accuracy and efficacy of the tests, and to ensure that the COVID-19 Tests were processed safely and effectively—thereby maintaining VICTIM 1's reputation for producing safe and accurate molecular diagnostic supplies. Additionally, VICTIM 1 sought to control distribution networks to prevent the distribution of COVID-19 Tests to geographic areas where the COVID-19 Tests were not authorized for use.

7.      In order to ensure that the COVID-19 Tests were stored, handled, and processed safely and effectively, VICTIM 1 had an approval process before it sold the

COVID-19 Tests to distributors. VICTIM 1 was primarily concerned with ensuring that distributors were experienced in selling molecular-based diagnostic products. This ensured that end users obtained complete and accurate information regarding the COVID-19 Tests, as well as accurate customer support after the sale. VICTIM 1 was also concerned with keeping the molecular testing supplies affordable. Therefore, VICTIM 1 did not sell the COVID-19 Tests to distributors who intended to re-sell them above a given price point, generally $14 per test.

8.  Caldwell Logistics was a front company created by Homeland Security Investigations for use during undercover operations. Caldwell Logistics purported to be in the business of purchasing COVID-19 Tests.

**The Small Business Administration and Economic Injury Disaster Loan Program**

9.  The United States Small Business Administration ("SBA") was an executive branch agency of the United States government that provided support to entrepreneurs and small businesses. The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities following disasters.

10. The Coronavirus Aid, Relief, and Economic Security (CARES") Act was a federal law enacted in March 2020 that was designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic. One source of relief was the Economic Injury Disaster Loan

("EIDL") Program.  The EIDL Program was designed to provide low-interest loans to qualifying small businesses to help them meet financial obligations and operating expenses that would have been met had a disaster not occurred.

11. To obtain a loan under the EIDL Program, a qualifying business was required to submit an EIDL application to the SBA.  The EIDL application was required to be signed by an authorized representative of the business.  The applicant, through the representative, was required to certify, among other things, (a) that the applicant was not "presently subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction"; (b) the applicant's gross revenue for the 12-month period from January 31, 2019 through January 31, 2020; and (c) the applicant's cost of goods sold during the 12-month period from January 31, 2019 through January 31, 2020.

12. If a small business met the size and other requirements to qualify for a loan under the EIDL Program, the amount of the loan approved was a function of the applicant's profits over a given period.  As such, higher profits resulted in a larger loan.

## COUNTS 1 through 3

### (Wire Fraud)

**The Grand Jury Further Charges That:**

1. The allegations of paragraphs 1 through 8 of the Introduction of this Indictment are incorporated herein by reference.

2. Between in or about March 2020, and on or about April 21, 2020, the exact dates being unknown, in the Western District of New York, and elsewhere, the defendant, JOSEPH BELLA ("BELLA"), did devise, and intend to devise, a scheme and artifice to defraud VICTIM 1 and to obtain money and property from VICTIM 1 by means of false and fraudulent pretenses, representations, and promises.

### Object of the Scheme and Artifice

3. The object of the scheme and artifice was for the defendant BELLA to trick and mislead VICTIM 1 into selling COVID-19 Tests to Medcor by falsely representing to VICTIM 1 that Medcor was the "end user" of the COVID-19 Tests, i.e., that Medcor was a laboratory capable of processing the COVID-19 Tests and testing for Sars-COV-2, which is the virus that causes COVID-19. In fact, Medcor was not a laboratory, did not own or have access to laboratory equipment necessary to safely store and process the COVID-19 Tests, and intended to re-sell the COVID-19 Tests at a significant markup.

### Manner and Means of the Scheme and Artifice

4. In or about March 2020 or April 2020, PERSON 1, a person known to the Grand Jury, contacted VICTIM 1 on behalf of a company called Clean Earth Products. PERSON 1 sought to become a distributor of the COVID-19 Tests. On or about April 16, 2020, PERSON 1 submitted a purchase order to VICTIM 1 on behalf of Medcor, in which BELLA, through Medcor, sought to purchase 5,000 COVID-19 Tests for $8 per test.

5. As part of the purchase transaction, BELLA engaged a representative of VICTIM 1 in a telephone conversation and falsely and fraudulent represented to the representative of VICTIM 1 that Medcor was an end user of COVID-19 Tests, i.e., a certified laboratory capable of safely and accurately processing COVID-19 Tests. Additionally, BELLA falsely and fraudulently represented to the representative of VICTIM 1 that Medcor would not re-sell, or attempt to re-sell, the COVID-19 Tests.

6. Based on these false and fraudulent statements, representations, and promises, VICTIM 1 sold 5,000 COVID-19 Tests to Medcor for $8 per test.

### Execution of the Scheme and Artifice

7. On or about the dates set forth below, in the Western District of New York, and elsewhere, the defendant, JOSEPH BELLA, for the purpose of executing the scheme and artifice, did transmit, and cause to be transmitted, by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, that is, the communications set forth below:

| Count Number | Date | Description of Wire Communication |
| --- | --- | --- |
| 1 | April 16, 2020 | Wire transfer $30,000 transfer from Bank of America account ending in 8936 to Bank of America account ending in 0489 |
| 2 | April 17, 2020 | Wire transfer of $15,000 transfer from Bank of America account ending in 8936 to Bank of America account ending in 0489 |
| 3 | April 17, 2020 | Telephone conversation between BELLA in Buffalo, New York, and the representative of VICTIM 1, in Salt Lake City, Utah, regarding purchase of COVID-19 Tests by Medcor. |

**All in violation of Title 18, United States Code, Sections 1343 and 2.**

## COUNT 4

### (Mail Fraud)

**The Grand Jury Further Charges That:**

1.  The allegations in paragraphs 1 through 8 of the Introduction and Counts 1 through 3 of this Indictment are incorporated herein by reference.

2.  Between in or about March 2020, and April 21, 2020, the exact dates being unknown, in the Western District of New York, and elsewhere, the defendant, JOSEPH BELLA, did devise, and intend to devise, a scheme and artifice to defraud VICTIM 1 and to obtain money and property from VICTIM 1 by means of false and fraudulent pretenses, representations, and promises.

3.  On or about the date set forth below, in the Western District of New York, and elsewhere, the defendant, JOSEPH BELLA, for the purpose of executing the scheme and artifice, and attempting to do so, did knowingly cause to be delivered by a private and commercial interstate carrier, according to the direction thereon and at the place at which it was directed by the person to whom it was addressed, and did take and receive therefrom, the matter set forth below:

| Count Number | Date | Description of Matter |
|---|---|---|
| 4 | April 20, 2020 | Shipment by VICTIM 1 of 5,000 Covid-19 Tests to BELLA/Medcor from Salt Lake City, Utah to Buffalo, New York. |

**All in violation of Title 18, United States Code, Sections 1341 and 2.**

## COUNTS 5 through 12

### (Wire Fraud)

### The Grand Jury Further Charges That:

1.  The allegations of paragraphs 1 through 8 of the Introduction and Counts 1 through 4 of this Indictment are incorporated herein by reference.

2.  Between in or about March 2020 and on or about April 21, 2020, the exact dates being unknown, in the Western District of New York, and elsewhere, the defendant, JOSEPH BELLA ("BELLA"), did devise, and intend to devise, a scheme and artifice to defraud potential purchasers of COVID-19 Tests and to obtain money and property from potential purchasers of COVID-19 Tests by means of false and fraudulent pretenses, representation and promises.

### Object of the Scheme and Artifice

3.  The object of the scheme and artifice was for the defendant, JOSEPH C. BELLA III, to trick and mislead persons into purchasing COVID-19 Tests by making false and fraudulent representations including the representations that Medcor was authorized to offer the COVID-19 Tests for sale and that it employed doctors and others who could provide support to buyers after the sale. In fact, Medcor was not authorized to distribute the COVID-19 Tests and did not employ doctors or others who could provide support to customers after the sale.

**Manner and Means of the Scheme and Artifice**

4. On or about March 29, 2020, BELLA created a post on his personal Facebook page stating: "Attention HEALTHCARE FACILITIES: We have FDA approved COVID-19 test kits that every healthcare facility either has very short supply of or is completely out of. They are 48-hour turnaround. . . . Email JBella@Med-Cor.com for pricing and availability." Facebook was a company headquartered in Menlo Park, California, that offered, among other things, communications over the internet utilizing servers located outside of New York.

5. Between on or about April 2, 2020, and on or about April 23, 2020, BELLA communicated with an undercover federal agent ("UC") by telephone and text message, and by email utilizing the email account JBella@Med-Cor.com. JBella@Med-Cor.com was an email account hosted by Cloudaccess.net, a company that offered email communication services over the internet through servers located outside of New York.

6. In furtherance of the scheme and artifice, BELLA falsely and fraudulently represented to the UC that BELLA had 50,000 COVID-19 Tests for sale; that the COVID-19 Tests were being stored in a warehouse in San Diego, California at -20 degrees Celsius; that Medcor was an "exclusive licensed reseller" of the COVID-19 Tests; and that Medcor employed doctors and scientists to answer customers' questions. BELLA offered to sell the COVID-19 Tests to the UC for $30 per test, or more, depending on quantity purchased.

7. In fact, Medcor was not an "exclusive licensed reseller" of COVID-19 Tests and did not employ doctors or others to answer customers' questions or provide support after the sale of such tests. Furthermore, Medcor did not own or possess any COVID-19 Tests at the time that BELLA initially offered them for sale. BELLA fraudulently obtained 5,000 COVID-19 Tests from VICTIM 1 during his negotiations with the UC, and BELLA did not ensure that the COVID-19 Tests were properly stored at -20 degrees Celsius, leading to their degradation and ultimately the loss of all 5,000 tests.

8. The defendant BELLA's false statements, representations, and promises were intended to cause victims to purchase COVID-19 Tests at a significantly increased price and through illegitimate channels.

9. On or about the dates set forth below, in the Western District of New York, and elsewhere, the defendant, JOSEPH BELLA, for the purpose of executing the scheme and artifice, did transmit, and cause to be transmitted, by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, that is, the communications set forth below:

| COUNT | DATE | COMMUNICATION |
|---|---|---|
| 5 | March 29, 2020 | Facebook Post using the account "JoeyBella," stating "Attention HEALTHCARE FACILITIES: We have FDA approved COVID-19 test kits that every healthcare facility either has very short supply of or is completely out of. They are 48-hour turnaround. . . . Email JBella@Med-Cor.com for pricing and availability." |
| 6 | April 1, 2020 | Email from JBella@med-cor.com to Kjohnson@caldwelllogistics.com, stating "I have 50k FDA approved tests with 48 hour results. I'll get you pricing and delivery info afternoon." |

| | | |
|---|---|---|
| 7 | April 1, 2020 | Email from JBella@med-cor.com to kjohnson@caldwelllogistics.com , stating "It's $33/test plus shipping (thay are dry ice packed and ready to go) for large orders. These kits are here in the states now and ready for release. Info is available on kits. Let me know if you're interested in large buys." |
| 8 | April 2, 2020 | Email from JBella@med-cor.com to kjohnson@caldwelllogistics.com and copying JGabriel@med-cor.com, stating "Test kit details incoming…" |
| 9 | April 2, 2020 | Email from jgabriel@med-cor.com to kjohnson@caldwelllogistics.com copying jbella@med-cor.com, stating "[t]he requested information related to the COVID-19 test kits is attached," and attaching pdf document. |
| 10 | April 2, 2020 | Email from JGabriel@med-cor.com to kjohnson@caldwelllogistics.com, copying jbella@med-cor.com, providing additional information re: COVID-19 Tests. |
| 11 | April 3, 2020 | Email from JBella@med-cor.com to KJohnson@caldwelllogistics.com, stating "$35/kit for large order (10k+). Goes down to $30 for 50k. Half down and they are shipped from S. Cali in dry ice. There are swan [sic] tests. They swab needs to be in the nose for a few secs. Then 45 mins for results. Will need LOI and we will send baking [sic] info." |
| 12 | April 15, 2020 | Email from JGabriel@med-cor.com to kjohnson@caldwelllogistics.com, copying jbella@med-cor.com, attaching Invoice 20-1457 and stating payment terms for COVID-19 Tests. |

**All in violation of Title 18, United States Code, Sections 1343 and 2.**

11

## COUNTS 13 and 14

### (Wire Fraud)

### The Grand Jury Further Charges That:

1. The allegations of paragraphs 9 through 12 of the Introduction of this Indictment are incorporated herein by reference.

2. Between in or about July 2020, the exact date being unknown, and on or about August 11, 2020, in the Western District of New York, and elsewhere, the defendant, JOSEPH BELLA, did devise, and intend to devise, a scheme and artifice to defraud the Small Business Administration ("SBA") and to obtain money and property from the SBA by means of false and fraudulent pretenses, representations, and promises.

### Object of the Scheme and Artifice

3. The object of the scheme and artifice was for BELLA to trick and mislead the SBA into approving a loan under the EIDL Program by falsely and fraudulently representing the annual revenue and expenses of BuyMyCard, as well as the defendant's criminal history, to the SBA.

### Means and Manner of the Scheme and Artifice

4. On or about July 29, 2020, BELLA directed his subordinate, WITNESS 1, a person known to the Grand Jury, to submit a loan application under the EIDL Program to the SBA. WITNESS 1 completed the application online by reading the application questions

to BELLA, and then recording the responses BELLA gave to WITNESS 1 in the loan application.

5. On the application, WITNESS 1, at BELLA's direction, falsely and fraudulently represented to the SBA that BELLA was not under indictment or otherwise subject to formal criminal charges in any jurisdiction. In fact, BELLA was indicted in the Western District of New York on July 23, 2020, and BELLA was arraigned on those charges on July 27, 2020.

6. On the application, WITNESS 1, at BELLA's direction, falsely and fraudulently represented to the SBA that BuyMyCard's revenue between January 31, 2019 and January 31, 2020 was $500,000, when, in fact, the revenue for BuyMyCard in that period was less than $100,000.

7. On the loan application, WITNESS 1, at BELLA's direction falsely and fraudulently represented to the SBA that BuyMyCard's cost of goods sold between January 31, 2019 and January 31, 2020 was $0, when, in fact, the actual cost of goods sold in that period was greater than $0.

8. Based on these false and fraudulent representations, the SBA approved and funded a $149,900 loan to BuyMyCard under the EIDL Pgrogam.

### Execution of the Scheme and Artifice

9. On or about the dates set forth below, in the Western District of New York, and elsewhere, the defendant, JOSEPH BELLA, for the purpose of executing the scheme and artifice, did transmit, and cause to be transmitted, by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, that is, the communications set forth below:

| COUNT | DATE | DESCRIPTION |
| --- | --- | --- |
| 13 | July 29, 2020 | Electronic submission of EIDL application from Buffalo, New York to an SBA contractor in Des Moines, Iowa, via internet portal. |
| 14 | August 11, 2020 | $149,900 wire transfer from the Small Business Administration to KeyBank Account ending in 6129. |

**All in violation of Title 18, United States Code, Sections 1343 and 2.**

### COUNT 15

**(False Statements on a Loan Application)**

**The Grand Jury Further Charges That:**

1. The allegations of paragraphs 9 through 12 of the Introduction and Counts 13 and 14 of this Indictment are incorporated herein by reference.

2. On or about July 29, 2020, in the Western District of New York, and elsewhere, defendant JOSEPH C. BELLA III, did knowingly make a false statement for the purpose of influencing the action of the Small Business Administration, in connection with an application, advance, discount, commitment, and loan in that the defendant represented to the Small Business Administration in an Economic Injury Disaster Loan Application that (1)

he was not presently under indictment or otherwise subject to formal criminal charges in any jurisdiction; (2) the gross revenue for BuyMyCard from January 31, 2019 through January 31, 2020 was $500,000; and (3) that the cost of goods sold for BuyMyCard from January 31, 2019, through January 31, 2020, was $0; when, in truth and fact, as the defendant well knew, (1) he had been indicted by a federal grand jury in the Western District of New York on or about July 23, 2020; (2) the gross revenue for BuyMyCard during that period was substantially less than $500,000; and (3) the cost of goods sold for BuyMyCard during that period was substantially more than $0.

**All in violation of Title 18, United States Code, Sections 1014 and 2.**

### COUNT 16 and 17

### (Money Laundering)

### The Grand Jury Further Charges that:

1. The allegations of Counts 13 and 14 of this Indictment are incorporated herein by reference.

2. On or about the dates set forth below, in the Western District of New York, and elsewhere, the defendant, JOSEPH BELLA, did knowingly, intentionally, and unlawfully engage in, and attempt to engage in, the monetary transactions in the approximate amounts set forth below, by, through, and to a financial institution engaged in, and the activities of which affected, interstate and foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from specified unlawful activity, that is, wire fraud, in violation of Title 18, United States Code, Section 1343, and that

while engaging in, and attempting to engage in, such monetary transactions, knew that the funds and monetary instruments involved in the transactions constituted, and were derived from, proceeds obtained from a criminal offense:

| COUNT | DATE | AMOUNT | MONETARY TRANSACTIONS |
|---|---|---|---|
| 16 | August 11, 2020 | $50,000 | Internet transfer of $50,000 from KeyBank Account ending in 6129 to KeyBank Account ending in 6103 |
| 17 | August 11, 2020 | $85,000 | Internet transfer of $85,000 from KeyBank Account ending in 6129 to KeyBank Account ending in 6111 |

**All in violation of Title 18, United States Code, Sections 1957(a) and 2.**

**FIRST FORFEITURE ALLEGATION**

**(Proceeds Forfeiture)**

**The Grand Jury Alleges That:**

Upon conviction of one or more of the offenses set forth in Counts 5 through 12 of this Indictment, the defendant, JOSEPH BELLA, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense. The property to be forfeited includes, but is not limited to, the following:

**A.    MONETARY SUM**

    i.    The approximate sum of $82,150 United States currency, which sum of money is equal to the total amount of proceeds obtained as a result of the offense for which the defendant, JOSEPH BELLA, is charged in Counts 5 through 12.  In the event that the above sum is not available, then a money judgment for the same amount will be entered against the defendant.

B.  **BANK AND INVESTMENT ACCOUNTS**

    i.  $82,150 seized From Bank of America Account ending in 8963, held in the name of Med-Cor Staffing Inc., by law enforcement on or about May 12, 2020.

**All pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).**

## SECOND FORFEITURE ALLEGATION

### (Proceeds Forfeiture)

**The Grand Jury Further Alleges That:**

Upon conviction of one or more of the offenses set forth in Counts 13 through 15 of this Indictment, the defendant, JOSEPH BELLA, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense. The property to be forfeited includes, but is not limited to, the following:

A.  **MONETARY SUM**

    i.  The approximate sum of $149,900 which sum of money is equal to the total amount of proceeds obtained as a result of the offenses for which the defendant, JOSEPH BELLA, is charged in Counts 13 through 15. In the event that the above sum is not available, then a money judgment for the same amount will be entered against the defendant.

B.  **BANK AND INVESTMENT ACCOUNTS**

    i.  $45,454.82 seized from Key Bank Account ending in 6111, held in the name of Medcor Staffing Inc., by law enforcement on February 11, 2021; and

    ii.    $3,350.61 seized from Key Bank Account ending in 6103, held in the name of Tatonka Industries LLC, by law enforcement on February 11, 2021.

If any of the property described above, as a result of any act or omission of the defendant:

1. cannot be located upon the exercise of due diligence;
2. has been transferred or sold to, or deposited with, a third person;
3. has been placed beyond the jurisdiction of the Court;
4. has been substantially diminished in value; or
5. has been commingled with other property which cannot be divided without difficulty;

The United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p) including but not limited to:

    i.    $114,063.53 seized From Bank of America account ending in 8963, held in the name of Med-Cor Staffing Inc., by law enforcement on or about May 12, 2020.

**All pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 21, United States Code, Section 853(p), and Title 28, United States Code, Section 2461(c).**

### THIRD FORFEITURE ALLEGATION

**(Money Laundering Forfeiture)**

**The Grand Jury Further Alleges That:**

Upon conviction of one or both of the offenses set forth in Counts 16 and 17 of this Indictment, the defendant, JOSEPH BELLA, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), the following property:

A.     **PROPERTY**

All right, title and interest in any and all property involved in violations of Title 18, United States Code, Section 1957 for which the defendant is convicted, and all property traceable to such property, including the following: 1) all property or other property or traceable to such property, that was the subject of each transaction, transmission or transfer in violation of Section 1957; 2) all commissions, fees and other property constituting proceeds obtained as a result of those violations; and 3) all property or traceable to such property, used in any manner or part to commit or to facilitate the commission of those violations.

B.     **MONETARY SUM**

The sum of approximately $135,000 United States currency, which sum of money is equal to the total amount of money involved in the money laundering offenses for which the defendant, JOSEPH BELLA, is charged. In the event that the above sum is not available, then a money judgment for the same amount will be entered against the defendant.

C.     **SPECIFIC ASSETS**

The following specific assets which have been identified as property involved in a money laundering transaction or transactions:

    i.     Key Bank Account ending in 6111, held in the name of Medcor Staffing Inc. seized by law enforcement on February 11, 2021; and

    ii.     Key Bank Account ending in 6103, held in the name of Tatonka Industries LLC seized by law enforcement on February 11, 2021.

If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

1. cannot be located upon the exercise of due diligence;
2. has been transferred or sold to, or deposited with, a third person;
3. has been placed beyond the jurisdiction of the Court;
4. has been substantially diminished in value; or
5. has been commingled with other property which cannot be divided without difficulty;

The United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1).

**All pursuant to Title 18, United States Code, Section 982(a)(1) and Title 21, United States Code, Section 853(p).**

DATED: Buffalo, New York, February 25, 2021.

        JAMES P. KENNEDY, JR.
        United States Attorney

BY:    S/NICHOLAS T. COOPER
        Assistant United States Attorney
        United States Attorney's Office
        Western District of New York
        138 Delaware Avenue
        Buffalo, New York 14202
        716/843-5830
        Nicholas.Cooper@usdoj.gov

A TRUE BILL:

S/FOREPERSON