IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

          v.                                           21-CR-31-RJA-MJR

JOSEPH BELLA,

                 Defendant.

_____

## GOVERNMENT'S RESPONSE TO DEFENDANT'S OBJECTION TO REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE MICHAEL J. ROEMER

**THE UNITED STATES OF AMERICA**, by and through its attorneys, Trini E. Ross, United States Attorney for the Western District of New York, Nicholas T. Cooper, Assistant United States Attorney, of counsel, hereby files its response to the defendant's objection (Dkt. 19) to United States Magistrate Judge Michael J. Roemer's Report and Recommendation, dated August 27, 2021 (Dkt. 16), denying the defendant's motion to suppress evidence (Dkt. 8).

## I.  BACKGROUND AND PROCEDURAL HISTORY

The defendant is charged by Indictment with seventeen (17) counts related to violations of Title 18, United States Code, Sections 1014, 1957(a), 1341, 1343, and 2. On March 2, 2021, the defendant was arraigned on the Indictment.

The Court issued a Scheduling Order requiring that discovery be completed by March 23, 2021, that defense motions be filed by May 7, 2021, that government responses be submitted by May 28, 2021, and that any defense replies be filed by June 11, 2021, with Oral Argument to be held on June 18, 2021. On May 7, 2021, the defendant filed his Omnibus Motion requesting various forms of relief. See Dkt. 8. On May 28, 2021, the government filed its response to the defendant's Omnibus Motion. See Dkt. 12. On August 13, 2021, the parties agreed to forego Oral Argument and rest on the papers, and on August 27, 2021, the Magistrate Court issued a Report and Recommendation denying the defendant's motions to suppress evidence. See Dkt. 16.

On September 28, 2021, the defendant filed objections to the Court's R&R. See Dkt. 19. The government's response to the defendant's objections is contained herein. The government respectfully requests that this Court adopt Judge Roemer's recommendations.

## II.  <u>STANDARD OF REVIEW</u>

Title 28, United States Code, Section 636(b)(1)(A) enables the Magistrate Court, upon referral, to adjudicate non-dispositive matters, that is, "any matter that does not dispose of a charge or defense."  See Fed. R. Crim. P. Rule 59(a).  This Court may reconsider orders of the Magistrate Court on such matters "where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law."  See § 636(b)(1)(A).  Under Local Rule 59(c)(1), "[t]he specific matters to which the party objects and the manner in which it is claimed that the order is clearly erroneous or contrary to law shall be clearly set out in the objections."

Title 28, United States Code, Section 636(b)(1)(B) enables the Magistrate Court, upon referral, to conduct hearings and submit to this Court proposed findings of fact and recommendations of law for dispositive matters, including motions to suppress evidence. The same section requires the District Court to make a <u>de novo</u> determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, or modify, in whole or in part, the finding or recommendations made by the magistrate. The judge may also receive further evidence or recommit the matter to the magistrate with instructions. <u>See</u> § 636(b)(1)(C). In making its independent determination, "[i]t is sufficient that the district court 'arrive at its own, independent conclusion about those portions of the magistrate's report to which objection is made . . . .' To this end, the court must 'exercise . . . sound judicial discretion with respect to whether reliance should be placed on [the magistrate's] findings.'" <u>Nelson v. Smith</u>, 618 F. Supp. 1186, 1189-90 (S.D.N.Y 1985) (internal citations omitted).

## III.  ARGUMENT

The Court should adopt Magistrate Judge Roemer's finding that the defendant's motion to suppress evidence should be denied. Dkt. 16 at pg. 4. Magistrate Judge Roemer noted that there was a substantial basis for the probable cause finding in each of search warrants being challenged by the defendant, and that a <u>Franks</u> hearing was not necessary. Dkt. 16 at pg. 6. The defense has objected to Magistrate Judge Roemer's determinations. Dkt. 19 at pgs. 2-5.

The defendant's Objection first addresses the Magistrate Court's determination that the defendant failed to provide the factual details necessary to establish that he has standing to contest the search of 155 Summer Street, where the defendant's business is located. Dkt. 19 at pg. 3.  Magistrate Judge Roemer indicated that "defendant here fails to provide factual details necessary for the Court to evaluate what privacy defendant enjoyed within some or all of the business premises including to what extend the locations searched were accessible to other persons." Dkt. 16 at pgs. 5-6.  Judge Roemer went on to assume, without holding, that the defendant had established standing, and addressed his arguments pertaining to the search of 155 Summer Street on their merits.

The government maintains that the defendant has not established a reasonable expectation of privacy in the entirety of MedCor office space at 155 Summer Street merely by contending that it is "where he runs his business" (20-CR-104, Dkt. 23-1, ¶ 3). As the government argued in its response to the defendant's omnibus motion (20-CR-104, Dkt. 43), the defendant does not establish a reasonably expectation of privacy that society would recognize as reasonable merely by stating that he owns a business that operates in the searched location. The defendant failed to put forth a sufficient factual basis, by means of a sworn affidavit, to establish standing in the specific areas searched. The defendant does not allege facts to establish that he enjoys an expectation of privacy in the break room of the offices at MedCor, where the Covid-19 tests kits were recovered. The defendant does not allege facts to establish standing that he enjoys an expectation of privacy in the offices of his employees, where some of the 37 electronic devices were seized from.

Magistrate Judge Roemer correctly acknowledged that the defendant's bare-bones affidavit making a conclusory remark about 155 Summer Street was deficient to establish standing. The defendant goes on to state that "the magistrate court's 'assumption' of standing should instead be a holding that the defendant has indeed demonstrated his standing to contest the searches and seizures that occurred at 155 Summer Street." Dkt. 19 at pg. 3. The government disagrees. The Magistrate Court correctly applied the law to the defendant's deficient attempt to establish standing and then generously went on to address the defendant's motions to suppress on their merits anyway, despite this deficiency. This Court should adopt Magistrate Judge Roemer's determination regarding the defendant's failure to properly establish standing.

The defendant next attacks the Magistrate Judge's determination that there was a substantial basis for a finding of probable cause. Dkt. 19 at pgs. 3-5. In the Report and Recommendation, the Magistrate Judge properly cites to (and then applies) the prevailing caselaw regarding this issue. Dkt. 47 at pg. 6. The Magistrate Court rejected the defendant's arguments that the warrants lacked probable cause, finding instead that "the warrant affidavits were well supported by factual allegations which established probable cause to believe the items, information, or evidence sought would be found in the places searched." Dkt. 16 at pg. 6-7.

The defendant argued in his motions to suppress (20-CR-104, Dkts. 23 and 42) that the warrant applications "were based upon information from confidential sources that was stale, hearsay, and incredible." The Magistrate Court points out that the defendant provides

"no context, let alone sworn statements evidencing personal knowledge" demonstrating that there were any inaccuracies in the confidential source information. Dkt. 16 at pg. 7. The Court goes on to state that the affidavits "explicitly allege" a pattern of ongoing criminal activity which makes the passage of time between the last described act and the presentation of the application less significant (citing United States v. Ortiz, 143 F.3d 728, 732-33 (2d Cir. 1998). Dkt. 16 at pg. 7. The defendant offers no countervailing authority, nor any legal analysis as to why the Magistrate Court's determination is wrong. The defendant merely repeats the same rote, conclusory phrases that were the basis for the first and second motions to suppress. Magistrate Judge Roemer details in the Report and Recommendation the nexus between the criminal activity described in the search warrant affidavits and the locations that were searched. Dkt. 16 at pg. 8.

Probable cause is a "flexible, common-sense standard." Texas v. Brown, 460 U.S. 730, 742 (1983). It merely requires the reasonable belief "that certain items may be contraband or stolen property or useful as evidence of a crime." Id. Courts "accord great deference to a judge's determination that probable cause exists, and ... resolve any doubt about the existence of probable cause in favor of upholding the warrant." United States v. Salameh, 152 F.3d 88, 113 (2d Cir. 1998) (internal quotation marks omitted).

Under Illinois v. Gates, 462 U.S. 213 (1983), probable cause for a search warrant is established if the "totality-of-the-circumstances" indicate a probability of criminal activity. Id. at 230-32. "[P]robable cause is a fluid concept--turning on the assessment of probabilities in particular factual contexts--not readily, or even usefully, reduced to a neat set of legal rules."

Id. at 232, 103 S. Ct. at 2329. As the Supreme Court has made clear, probable cause is comparable to evidence, "which warrant[s] suspicion" and requires "only the probability, and not a prima facie showing, of criminal activity." Illinois v. Gates, 462 U.S. at 235; see also United States v. Shipp, 578 F. Supp. 980, 985 (S.D.N.Y. 1984), aff'd sub nom., United States v. Wilkinson, 754 F.2d 1427 (2d Cir.), cert. denied, 472 U.S. 1019 (1985).  "Probable cause is not an especially demanding standard in this context."  United States v. Bellomo, 954 F. Supp. 630, 636 (S.D.N.Y. 1997).

The duty of a court reviewing the validity of a search warrant is simply to ensure the magistrate had a substantial basis for concluding that probable cause existed.  United States v. Rosa, 11 F.3d 315, 326 (2d Cir. 1993) (emphasis added); see also Illinois v. Gates, 462 U.S. 213, 238-239 (1983).  There exists a "presumption of validity with respect to the affidavit supporting the search warrant."  Franks v. Delaware, 438 U.S. 154, 171 (1978).  In this case, as discussed below, it is clear the issuing magistrates had a substantial basis for concluding that probable cause existed for the search warrant.

The affidavit supporting the search warrants for 155 Summer Street and 224 Summer Street presented sufficient evidence to meet the standard set forth in Gates. Specifically, the affidavit provided details regarding the defendant's involvement in an ongoing wire fraud scheme related to Covid-19 test kits. These details included Facebook posts from the defendant's personal account and excerpts of communications between the defendant and an undercover agent. The affidavit provided examples of misrepresentations made by the defendant to the undercover. The affidavit also detailed interviews between agents and the

Covid-19 test kit manufacturer indicating that the manufacturer relied upon fraudulent misrepresentations in their decision to ship test kits to the defendant. The affidavit established that the defendant resided at 224 Summer Street. Attachment B of the search warrant application for 224 Summer Street requested permission to search the defendant's residence for any item related to the advertisement for sale and sale of Covid-19 PPE, test kits, or testing supplies and other related documents and records. The affiant stated that based upon his training and experience, and the training and experience of other officers involved in the investigation, individuals who frequently engage in fraudulent activity often keep money, receipts, and bank records at their residence.

The affidavit also presented the Court with evidence about the defendant's involvement in controlled substance offenses, including information about open drug use at 224 Summer Street and information that the defendant indicated he had a source for obtaining marijuana in Syracuse, NY. The affidavit also detailed information agents received from a "concerned citizen" about the defendant's involvement in controlled substance distribution in downtown Buffalo, NY in 2016. This "concerned citizen" information was corroborated by other information provided in the affidavit, namely that the defendant was arrested in 2016 attempting to bring a controlled substance across the US border. The information was also corroborated by a list of the defendants 2016 cell phone contacts which included multiple persons suspected of or convicted of controlled substance offenses. The affidavit detailed the defendant's connections with persons currently charged in a narcotics conspiracy, individuals with a history of drug activity, individuals with suspected involvement in illicit debt collection

(wire fraud) schemes, suspected organized crime members and associates (including Italian Organized Crime members and associates).

The defendant argues that the search warrant was issued based on "confidential sources that provided stale, hearsay, and incredible information dating back to 2016 to alleged drug activity." (20-CR-104, Dkt. 27 at ¶ 7 and Dkt. 42 at ¶ 76). While it is accurate that the search warrant affidavit included information from confidential sources related to controlled substance offenses, that is not the entirety of what the affidavit included. In fact, the affidavit broke down detailed information linking the defendant and his residence to drug activity, his connections to others involved in drug offenses and organized crime activity, and also the defendant's involvement in a wire fraud scheme related to Covid-19 tests kits, and the probability that evidence of such scheme would be discovered at 224 Summer Street, the defendant's residence.

Even if the court were to set aside the confidential source information in its entirety, the affidavit still established probable cause to search 155 Summer Street and 224 Summer Street for the evidence listed in <u>Attachment B</u> related to the wire fraud offenses. The defendant's motion to suppress the evidence discovered at 224 Summer Street focuses solely on the portion of the search warrant affidavit that addresses the defendant's involvement in controlled substance offenses. (20-CR-104, Dkt. 27). The actual warrant authorized a search for evidence, fruits, and instrumentalities of violations of 18 U.S.C. 1343, 18 U.S.C. 1349, 18 U.S.C. 371, 18 U.S.C. 1962(d), 21 U.S.C. 846, and 21 U.S.C. 841(a)(1). The defendant points out that the Covid-19 test kits were delivered to the defendant's business, as if that fact

automatically invalidates a finding of probable cause that additional evidence of the fraud would be found in the defendant's home. (20-CR-104, Dkt. 27 at ¶ 9).  The search warrant affidavit and attachments lay out the reasonable basis for believing that specific types of evidence related to the wire fraud may be found in the defendant's home.

As noted in the Affidavit in Support of Search Warrant 20-MJ-5085 (premises search warrant) at ¶ 86, the Second Circuit held in United States v. Ortiz that "when the supporting facts present a picture of continuing conduct or an ongoing activity,…the passage of time between the last described act and the presentation of the application becomes less significant." 143 F.3d 728, 732-33 (2d Cir. 1998).  Applying the standard from Gates, the totality-of-the-circumstances in this case establish a probability that evidence related to controlled substance offenses, as detailed in Attachment B of the search warrant for 224 Summer Street, would be found in the defendant's home.

The affiant, an experienced law enforcement agent, detailed (Affidavit in Support of Search Warrant 20-MJ-5085, ¶ 73) how his training and experience informed his belief that individuals involved in fraudulent activity often keep money, receipts, and bank records at their residence. The affiant detailed  how his training and experience indicates that traffickers of controlled substances commonly maintain evidence of controlled substance trafficking offenses (e.g., records, notes, receipts, cellular phones) in a location where such evidence is readily accessible, such as their home (Affidavit in Support of Search Warrant 20-MJ-5085, ¶ 77).

The search warrant affidavit in support of the Search Warrants for the 37 electronic devices incorporated all the information included in the affidavit for the premises warrant, plus additional information. The additional information included the results of the searches at 224 Summer Street and 155 Summer Street. The searches at 224 Summer Street and 155 Summer Street each yielded evidence of both narcotics offenses and wire fraud offenses, strengthening the probability that additional evidence of those crimes would be contained in the electronic devices that were seized in those locations. The affiant, an experienced law enforcement officer, described the nexus between evidence of the enumerated offenses and electronic devices (Affidavit in Support of Search Warrant 20-MJ-5085, ¶ 77).

The opinion of law enforcement agents, based on their training and experience, can contribute significantly to a finding of probable cause. United States v. Akparanta, No. 19 CR. 363 (LGS), 2019 WL 5616875, at *3–4 (S.D.N.Y. Oct. 30, 2019). In Akparanta, law enforcement obtained a search warrant for the cell phone of the defendant (a corrections officer accused of having sexual contact with inmates) based upon informant information that was at least six-months old at the time the warrant was signed. Id.  In addition to the informant information, the affiant, an experienced law enforcement agent, offered his opinion that based upon his training and experience, evidence of criminal activity [stored electronically] can often be found months or even years after it occurred. Id.  The Court upheld the warrant, stating that the agent's opinion, based upon his training and experience, created a "fair probability" that the defendant's cell phone may contain evidence of the alleged crimes. Id. See e.g., Ganek v. Leibowitz, 874 F.3d 73, 85, (2d Cir. 2017) (finding probable cause for a search warrant based in part on an agent's training and experience that participants

in insider trading frequently maintain paper and electronic evidence of their illegal activity) United States v. Steppello, 664 F.3d 359, 362 (2d Cir. 2011) (same as to training and experience to interpret cryptic communications about drug trafficking).

The search warrant affidavits in support of the Search Warrants for 224 Summer Street, 155 Summer Street, and the 37 electronic devices established probable cause based, in part, upon the training and experience of the affiant. The Court should consider the experienced law enforcement agents' affirmations about his training and experience (and how it relates to the specific criminal activity contemplated in the warrants) when determining whether the issuing Magistrate had a substantial basis for finding that probable cause existed.

A search warrant issued by a neutral and detached magistrate is entitled to substantial deference, and doubts should be resolved in favor of upholding the warrant. Franks v. Delaware, 438 U.S. 154, 171 (1978); see also United States v. Travisano, 724 F.2d 341, 345 (2d Cir. 1983). However, even if the magistrate judge lacked a substantial basis for concluding that probable cause existed for the search warrant, the evidence should not be suppressed because the officers relied in good faith upon a search warrant issued by a neutral and detached magistrate judge. See United States v. Leon, 468 U.S. 897, 926 (1984) (observing "[i]n the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause"); see also United States v. Martin, 157 F.3d 46, 53 (2d Cir. 1998) (holding that because the officers who executed the search warrants acted in good faith, there was no

need to suppress evidence thus discovered, even if the search warrant neglected to describe the items to be seized with particularity or even if the warrant was stale when issued).

Finally, the defendant objects to the Magistrate Court's determination that the warrants were not based upon inaccurate information related to the defendant's criminal record. Dkt. 19 at pg. 4. The defendant contends in his Objection that the government has "consistently and erroneously asserted the defendant has a prior felony conviction." The Magistrate pointed out in the R&R that the defendant's own attorney believed him to have at least one felony conviction during his first detention hearing. Dkt. 16 at pg. 9.  The defendant now argues that he was mistaken when, during the detention hearing, his attorney acknowledged that he had at least one felony conviction. Dkt. 19 at pgs. 4-5. The defendant goes on to provide a document related to the defendant's nolo contendere plea in support of this argument. Dkt. 19-1. The defendant's argument here misses the mark. Regardless of whether the defendant is a convicted felon (which the government still contends, based upon the documents in our possession, that he is) it was certainly a good faith representation made to the Court at the time of the warrant application. Defense counsel has offered no information to the contrary.  The government's good-faith belief that the defendant was a convicted felon is supported by the defendant's attorney's own interpretation of the defendant's criminal history at the time of his detention hearing.

Even assuming, arguendo, that the Court determines that the search warrant in question was not supported by probable cause, the government maintains that the evidence obtained by law enforcement officers in this case should not be excluded.  The proof

13

establishes that the officers acted with objectively reasonable "good faith" in reliance upon the search warrant that was issued by a neutral and detached magistrate. See United States v. Leon, 468 U.S. 897 (1984). In Leon, the Supreme Court held that the exclusionary rule does not require the suppression of evidence seized by the police in good faith, pursuant to a warrant, even if the warrant is later held to be defective. This exception applies when the warrant is not supported by probable cause. See United States v. Cancelmo, 64 F.3d 804, 807-808 (2d Cir. 1995); United States v. Moore, 968 F.2d 216 (2d Cir. 1992); United States v. Fama, 758 F.2d 834, 38 (2d Cir. 1985). It also applies where there is some technical defect in the warrant. See Massachusetts v. Sheppard, 468 U.S. 981 (1984); United States v. Smith, 9 F.3d 1000, 1015 (2d Cir. 1993); United States v. Matias, 836 F.2d 744, 747 (92d Cir. 1998); United States v. Buck, 813 F.2d 588, 592-593 (2d Cir. 1987) (lack of particularity).

The good faith exception would be inapplicable only when: (1) the search warrant was based on an affidavit containing "knowing or reckless falsity" (see United States v. Reilly, 76 F.3d 1271, 1280-81 (2d Cir. 1996)); (2) the magistrate had simply acted as a "rubber stamp" for the police, see United States v. Whitehorn, 829 F.2d 1225, 1232 (2d Cir. 1987); (3) the application for the search warrant does not provide the magistrate with a substantial basis for determining the existence of probable cause, that is, where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; or (4) the warrant is so facially deficient that a police officer could not reasonable rely upon it with good faith. See Leon, supra, at 923; see also United States v. Wilhelm, 80 F.3d 116, 121 (4th Cir. 1996); United States v. Hodge, 246 F.3d 301 (3d Cir. 2001). The defendants' motions fail to establish

any basis which would render good faith inapplicable with regard to any of the search warrant at issue in this case.

The issuing magistrates, Judge Roemer (premises warrants) and Judge McCarthy (electronic device warrants), plainly disagreed with the defendant's conclusory assessment that "probable cause did not exist [to search 155 and 224 Summer Street]" (see Docket 23 at ¶74), or any other challenged warrants (i.e., with regard to electronic devices), and where, as here, Judge Roemer and Judge McCarthy had a substantial basis to conclude probable cause existed, this Court must uphold all of the search warrants. Defense counsel has proffered no evidence that law enforcement was dishonest or reckless in their preparation of the affidavit submitted in support of the search warrants. In fact, defense counsel claims that "the search warrants were based upon confidential sources that provided stale, hearsay, and incredible information dating back to 2016." Dkt. 23 at ¶ 75. This assertion by defense counsel is not supported by any sworn statement by any person with personal knowledge. Defense counsel also alleges, with respect to the electronic devices warrant, that

> the search warrants for electronic devices were based upon inaccurate information, to wit: that approximately two ounces of cocaine had been discovered in the defendant's residence upon execution of the original warrants. To the contrary, less than four grams of cocaine and personal use quantities of other controlled substances were found at the defendant's residence.

Dkt. 23 at ¶ 78 and Dkt. 42 at ¶ 79. This statement is patently false. Indeed, if this Court were to review ¶ 12 of the sealed search warrant affidavit for the electronic devices, 20-MJ-1061, it would be clear that the statement made by defense counsel in Dkt. 23, ¶ 78 is not accurate. The defendant's baseless and speculative contention that the government misled the Court

about the items found during the execution of the premises warrant, 20-M-5085, is without merit.

The defense further argues that the search warrants issued for the premises and the electronic devices were "constitutionally overbroad." Dkt. 23 at ¶ 76. To the contrary, the search warrant for 155 Summer Street and 224 Summer Street, (20-M-5085), specifies clearly the areas to be searched on the face of the warrant and also goes into further detail in Attachment A which was attached to the warrant and incorporated by reference. The premises warrant specifies the crimes for which law enforcement had established probable cause to search, and the warrant also details a specific schedule of items to be seized in Attachment B which was attached to the warrant and incorporated by reference. Attachment B lists the types of items that will be searched for and seized by law enforcement, and also contains a paragraph (see Attachment B at ¶ Y) specifying the offenses related to the warrant.

The search warrants for the 37 electronic devices, 20-MJ-1061, also specifies the information to be searched in detail in Attachment A, which was attached to the warrant and incorporated by reference. The electronic devices warrant specifies the crimes for which law enforcement had established probable cause to search. The warrant also details a specific schedule of items to be seized in Attachment B which was attached to the warrant and incorporated by reference. Attachment B for the electronic device warrant specifies the types of items that will be searched for and seized by law enforcement and lists the offenses that those items relate to at the top of the attachment.

A search warrant must "describe with particularity the place to be searched and the items to be seized." <u>United States v. Bershchansky</u>, 788 F.3d 102, 110 (2d Cir. 2015). A search warrant satisfies the basic elements of the particularity requirement where it lists the charged crimes, describes the place to be searched, and designates the information to be seized in connection with the specified offenses. <u>United States v. Ulbricht</u>, 858 F.3d 71, 101 (2d Cir. 2017). A warrant may be broad, in that it authorizes the government to search an identified location or object for a wide range of potentially relevant material, without violating the particularity requirement. <u>Id.</u> at 102.

## IV.  <u>CONCLUSION</u>

This Court should adopt Magistrate Judge Roemer's findings in their entirety.


DATED:   Buffalo, New York, October 14, 2021.


                              TRINI E. ROSS
                              United States Attorney


                    BY:    s/NICHOLAS T. COOPER
                              Assistant United States Attorney
                              United States Attorney's Office
                              Western District of New York
                              138 Delaware Avenue
                              Buffalo, New York 14202
                              (716) 843-5830
                              Nicholas.Cooper@usdoj.gov